Hon, Appellant, *v.* Percy A. Brown and Company.

Argued November 9, 1954. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY, MUSMANNO and ARNOLD, JJ.

194

*Albert H. Aston,* with him *Thomas C. Moore* and *Thomas E. Brislin,* for appellants.

*Robert J. Doran,* with him *George B. Ritchie* and *Reynolds, Reynolds & Doran,* for appellee.

OPINION PER CURIAM, January 3, 1955:
The judgment of the court below refusing to remove a compulsory nonsuit is affirmed on the opinion of Judge APONICK.

———

DISSENTING OPINION BY MR. JUSTICE MUSMANNO:
On October 27, 1951, Mrs. Mary S. Hon, 68 years of age, entered the business establishment of the defendant which consisted of a serve-yourself market, a restaurant and a cafeteria. She took hold of one of the basket go-carts (which are about 3½ feet high), circulated through the aisles of attractive commodities, filled her basket with meats and groceries, and paid for her purchases at the cashier's desk. She left her packages with her husband and step-father who were with her, and then started for the rest room on the second floor. In order to reach the stairway conducting to the rest room, she had to pass through an aisle which was formed, on one side, by the four doors connecting with the street and, on the other side, by a row of basket go-carts five layers thick. The width

of this aisle was 4 feet. Two of the doors swung out-
wardly and they were known as the "Out" doors. Two
swung inwardly and they were known as the "In"
doors. On her way to the rest room, Mrs. Hon passed
by the "Out" doors and the "In" doors. But as she
was leaving behind her the last "In" door, an incom-
ing customer pushed it open, striking Mrs. Hon on the
right leg and thigh with such force that she was thrown
to the floor and as a consequence suffered serious in-
juries.

After these facts were related in Court, the Trial
Judge entered a compulsory nonsuit against her which
the Court en banc refused later to lift. An appeal to
this Court followed. The Majority of this Court has ac-
cepted the meager Opinion of the Court below as its
own so that in commenting on it I will refer to it as
the Majority Opinion.

The Majority states that the plaintiff failed to make
out a prima facie case of negligence but adds also that
if there was any negligence on the part of the defend-
ant, the "female plaintiff convicted herself of con-
tributory negligence."

It seems to me that the negligence of the defendant
store is obvious, palpable and almost indisputable. We
have noted that the width of the aisle was 4 feet, that
is, 48 inches. The "In" doors were 32″ wide and, when
opening into the building, they penetrated into the
store a distance of 28 inches. Thus when either of the
"In" doors opened to the full extent of its hinged arc,
the width of the aisle was reduced 28 inches, thus
leaving only 20 inches for the passage. In view of the
fact that most adults are 20 inches or more wide, the
mathematical conclusion is reached that the store own-
ers allowed a condition to exist which meant that each
time the opening of an "In" door coincided with the
passing of a customer in the aisle, the customer would

either be struck by the door or be caught in a tight squeeze.

The Majority argues, however, that if the store owners knew of this tight squeeze the plaintiff had to know it also because she had been a customer in that store for some 20 years. I fail to see how this fact deprives her of the right not to be knocked down. Store owners who urge people into their business houses so that they may be sold goods at a profit to the invitors are required by the law to exercise due care in saving the invitees from unnecessary harm. Although Mrs. Hon had entered the store many times, the record does not show that the aisle was always as narrow as it was on the day of the accident. It may be that on that particular day the basket go-carts were crowded closer to the doors than they usually were. That the width of the aisle was not always the same is evident from the fact that the plaintiff, looking at the photograph introduced at the trial, said that the baskets in that picture were not in the same position they were on the day of the mishap.

The fact that the plaintiff was on her way to the rest room did not make the passageway any less a lane of travel. It was through this aisle also that customers reached the cafeteria.

The Majority, however, seeks to make a distinction between a customer who is still shopping and one who has completed his shopping; thus suggesting that the store-owner owes a greater degree of care to persons who are still spending money than it does to those who have already emptied their pockets into the coffers of the establishment. I do not believe that the law is so harsh or so mercenarily minded. A customer is a customer until he leaves the store, for as long as he remains under the roof of the store there is always the possibility that he will spend another five or ten-dollar

bill for some article which has been ingeniously displayed to catch his eye at the last moment. Be that as it may, only an arbitrary judgment could say that Mrs. Hon had already left the store and that the store-owner was not required under the law to continue to maintain the premises in a reasonably safe condition for the purpose for which Mrs. Hon was invited to visit the store.[*]

The store-owners knew that the particular "In" door involved here, when opened (and it opened hundreds of times a day), became a wall which narrowed the width of the aisle 28 inches. In *Nettis v. Gen. Tire Co.*, 317 Pa. 204, 209, this Court said: "All the authorities agree that it is incumbent upon the owner of premises upon which persons come by invitation, express or implied, to maintain such premises in a reasonably safe condition for the contemplated uses thereof and the purposes for which the invitation was extended."

Can it be said as a matter of law that the store-owners discharged their obligation of maintaining their premises in a reasonably safe condition when they provided a space of only 20 inches through which customers had to pass? All that the defendant owners would have had to do to make the passageway safe was to push the stack of basket go-carts back far enough to widen the passageway. It was definitely a question for the jury to determine whether by allowing this compressing Magellan Strait in the store, the proprietors discharged the duty imposed upon them by the law for the benefit of their business invitees.

Section 343 of the Restatement of Torts sets forth the liability of land owners to business invitees. Comment d of that Section declares: "A business visitor is

---

[*] *Jerominski v. Fowler*, 372 Pa. 291.

entitled to expect that the possessor will take reasonable care to ascertain the actual condition of the premises and, having discovered it, either to make it reasonably safe by repair or to give warning of the actual condition and the risk involved therein."

There were no signs displayed here warning customers to beware of the invading "In" door. A door that swings into the direct line of movement of one lawfully on the premises cannot be other than a defect or risk which the proprietor is either required to readjust or to post signs warning business invitees of the existent danger.

The case of *Bilger v. Great Atlantic & Pacific Tea Company,* 316 Pa. 540, to which the Majority refers, is completely outside the sphere of pertinency insofar as the principle of law involved in this case is concerned. There, the plaintiff was injured after she had *left* the store. She fell in an outer vestibule which, in the words of this Court, was "outside the doors of the store, was on a level with the sidewalk, and in a sense constituted an extension of it." It is exceedingly important to note, however, that in that very case this Court said that the degree of care required on the part of a customer is a question for the jury when the accident occurs in the "aisles and interior passageways of the stores." No matter how the evidence is read in the case at bar, the conclusion is absolutely inescapable that the accident occurred in an *interior passageway* of the defendants' store.

The Majority convicts Mrs. Hon of contributory negligence on the supposition that she should have known that the doors opened inwardly and that the doors being made of glass she should have seen people coming in to the store. In the first place, it was not feasible, practicable or necessary for her to study doors in no way associated with her journey. She was moving

*past* the doors, not through them. Her path of travel required her to look forward, not to the side. Had she looked sidewise while proceeding ahead and had stumbled over some obstacle on the floor in front of her, it would undoubtedly have been argued in behalf of the defendant store that her negligence lay in not looking ahead. The Majority says that the duty of Mrs. Hon, after completing her shopping, was to "watch where she was going." That is exactly what she was doing. She was watching *ahead,* and that is where she was going!

The Majority also overlooks this extremely vital fact: the plaintiff had actually passed the *last door* when she was struck, so that any studying of the space outside the store to see who might be entering was utterly supererogatory. But even if we assume that Mrs. Hon should have looked through the doors when she passed them, certainly it cannot with any show of reason or justice be demanded that she had to keep her head over her shoulder in order to avoid being struck from the rear. Until store patrons are equipped with rear mirrors they should not be charged with contributory negligence for what happens in their wake.

I dissent.